## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

| | |
|---|---|
| Express Scripts, Inc. *et al.*, <br><br>     *Plaintiffs*, <br><br> vs. <br><br> Rodney Richmond, *et al.*, <br><br>     *Defendants*. | Lead Case No. 4:25-cv-520-BSM |
| Pharmaceutical Care Management Association, *et al.*, <br><br>     *Plaintiffs*, <br><br> vs. <br><br> Arkansas State Board of Pharmacy, *et al.*, <br><br>     *Defendants*. | Member Case No. 4:25-cv-561-BSM |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION
## FOR A PRELIMINARY INJUNCTION IN MEMBER CASE NO. 4:25-CV-561

David S. Mitchell, Jr. (Ark. Bar 2010271)
  Rose Law Firm,
  a Professional Association
  120 East Fourth Street
  Little Rock, AR 72201
  (501) 375-9131
  dmitchell@roselawfirm.com

Tyler D. Mlakar (Ark. Bar 2022150)
  Rose Law Firm,
  a Professional Association
  809 S. 52nd St., Ste. A
  Rogers, AR 72758
  (479) 301-2444
  tmlakar@roselawfirm.com

Michael B. Kimberly*
Linda M. Blair*
  Winston & Strawn LLP
  1901 L Street NW
  Washington, DC 20036
  (202) 282-5096
  mkimberly@winston.com
  lblair@winston.com

* admitted *pro hac vice*

## TABLE OF CONTENTS

Introduction ........................................................................................................... 1

    A.   Plaintiffs are likely to succeed on the merits of their unconstitutional
         local protectionism claim ...................................................................... 3

        1.   In both purpose and effect, Act 624 discriminates against out-of-
            state companies to protect in-state companies .............................. 4

        2.   The Supreme Court's decision in *Exxon* is distinguishable .......................... 7

        3.   Act 624's economic protectionism also violates the Privileges and
            Immunities Clause .................................................................... 10

    B.   Plaintiffs are likely to succeed on the merits of their bill of attainder
         claim ................................................................................... 12

        1.   Act 624 designates particular persons—PBMs that have affiliated
            pharmacies—for punishment ...................................................... 14

        2.   By directing the Board to revoke permits, Act 624 inflicts both a
            traditional and contemporary form of punishment ...................... 15

    C.   The remaining preliminary injunction factors favor immediate relief ............... 20

Conclusion ........................................................................................................ 23

**TABLE OF AUTHORITIES**

**Cases**

*American Trucking Associations v. Rhode Island Turnpike & Bridge Authority*,
123 F.4th 27 (1st Cir. 2024) .................................................................................... 6

*Brandt v. Rutledge*,
551 F.Supp.3d 882 (E.D. Ark. 2021) ...................................................................... 22

*Chamber of Commerce of the United States v. Whiting*,
563 U.S. 582 (2011) ................................................................................................ 17

*Cherry Hill Vineyards, LLC v. Lilly*,
553 F.3d 423 (6th Cir. 2008) .................................................................................... 7

*Choreo, LLC v. Lors*,
--- F. Supp. 3d ---, 2025 WL 973194 (S.D. Iowa 2025) ...................................... 20-21

*Cigna Corp. v. Bricker*,
103 F.4th 1336 (8th Cir. 2024) ................................................................................ 20

*City of Philadelphia v. New Jersey*,
437 U.S. 617 (1978) ................................................................................................... 3

*Consolidated Edison v. Pataki*,
292 F.3d 338 (2d Cir. 2002) .................................................................................... 13

*Dataphase Systems Inc. v. C L Systems, Inc.*,
640 F.2d 109 (8th Cir. 1981)................................................................................... 22

*Exxon Corp. v. Governor of Maryland*,
437 U.S. 117 (1978) ..........................................................................................*passim*

*Family Winemakers of California v. Jenkins*,
592 F.3d 1 (1st Cir. 2010) ............................................................................... 7, 9-10

*Foretich v. United States*,
351 F.3d 1198 (D.C. Cir. 2003) ............................................................................... 13

*Governor of Maryland v. Exxon Corp.*,
370 A.2d 1102 (Md. 1977)........................................................................................ 7

*Grand River Enterprises Six Nations v. Beebe*,
574 F.3d 929 (8th Cir. 2009).................................................................................. 4-6

*Healthcare Distribution Alliance v. Zucker,*
    353 F. Supp. 3d 235 (S.D.N.Y. 2018) ......................................................................... 7

*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) ......................................................................................................11

*International Union v. Brock,*
    477 U.S. 274 (1986)......................................................................................................11

*Iowa Utilities Board v. FCC,*
    109 F.3d 418 (8th Cir. 1996)...................................................................................... 20

*Island Silver & Spice, Inc. v. Islamorada,*
    542 F.3d 844 (11th Cir. 2008) .................................................................................... 7

*Jones v. Gale,*
    470 F.3d 1261 (8th Cir. 2006) ............................................................................... 9-10

*Lewis v. BT Investment Managers, Inc.,*
    447 U.S. 27 (1980).......................................................................................................... 3

*Medicine Shoppe International v. S.B.S. Pill Dr.,*
    336 F.3d 801 (8th Cir. 2003) ...................................................................................... 21

*Mercy Health Services Inc. v. Efstratiadis,*
    579 F. Supp. 3d 1096 (N.D. Iowa 2022)................................................................... 21

*Missouri v. Trump,*
    128 F.4th 979 (8th Cir. 2025)..................................................................................... 20

*MPAY Inc. v. Erie Custom Computer Applications, Inc.,*
    970 F.3d 1010 (8th Cir. 2020) .................................................................................... 22

*National Pork Producers Council v. Ross,*
    598 U.S. 356 (2023) ....................................................................................................... 3

*Neelley v. Walker,*
    322 F. Supp. 3d 1238 (M.D. Ala. 2018) ................................................................... 13

*Nelson v. Town of Paris,*
    78 F.4th 389 (7th Cir. 2023)....................................................................................... 19

*North Carolina v. Covington,*
    581 U.S. 486 (2017)......................................................................................................11

*Oregon Waste Systems v. Department of Environmental Quality of State of Oregon*,
    511 U.S. 93 (1994) ...................................................................................... 4

*Palmer v. Clarke*,
    408 F.3d 423 (8th Cir. 2005) .................................................................. 14

*Reefco Services, Inc. v. Government of Virgin Islands*,
    830 F. Appx. 81 (3d Cir. 2020).............................................................. 6-7

*Sarasota Wine Market v. Schmitt*,
    987 F.3d 1171 (8th Cir. 2021) ..........................................................10, 12

*Selective Service System v. Minnesota Public Interest Research Group*,
    468 U.S. 841 (1984)............................................................................*passim*

*Sierra Club v. U.S. Army Corps of Engineers*,
    645 F.3d 978 (8th Cir. 2011) .................................................................. 20

*Smith v. Doe*,
    538 U.S. 84 (2003) .................................................................................. 19

*South Dakota Farm Bureau v. Hazeltine*,
    340 F.3d 583 (8th Cir. 2003) ............................................................... 9-10

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ................................................................................ 11

*Trump v. CASA, Inc.*,
    No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025).............................. 11

*United Healthcare Insurance Co. v. AdvancePCS*,
    316 F.3d 737 (8th Cir. 2002) .................................................................. 21

*United States v. Brown*,
    381 U.S. 437 (1965)........................................................................2, 13, 19

*W. & S. Life Insurance Co. v. State Board of Equalization of California*,
    451 U.S. 648 (1981) ............................................................................11-12

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*,
    110 F. Supp. 3d 719 (W.D. Tex. 2015) .................................................. 12

*Walmart Inc. v. United States Department of Justice*,
    517 F. Supp. 3d 637 (E.D. Tex.)............................................................. 18

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..................................................................................11

*WMX Technologies, Inc. v. Gasconade Couty, Missouri*,
    105 F.3d 1195 (8th Cir. 1997) ...........................................................14, 16

**Statutes**

Administrative Procedure Act..................................................................17-18

Arkansas Code § 17-92-313 ...................................................................... 13

Arkansas Code § 17-92-314 ...................................................................2, 13

Arkansas Code § 17-92-507 ...............................................................2, 12, 19

Arkansas Code § 23-92-508(c) .............................................................2, 13

Arkansas Code § 23-92-508(c)(2)........................................................ 2, 12

**Other authorities**

Act 624, 95th General Assembly, Regular Session (Ark. 2025)..............................*passim*

Greg Geary, *Small Pharmacies in Danger of Closing if PBM Bill Doesn't
    Pass, State Representative Says*, White County Citizen (Mar. 27, 2025),
    https://tinyurl.com/bdennnse ..................................................................5-6

Webster's Third New International Dictionary 1304 (2002)......................................... 17

7A Wright, Federal Practice and Procedure § 1751.........................................................11

## INTRODUCTION

The State's opposition brief is noteworthy as much for what it does *not* say as for what it does. For example, the State does not seriously contest that plaintiffs here will face immense irreparable harms absent a preliminary injunction. It devotes just three cursory and illogical sentences to that topic, buried at the bottom of the final paragraph of its 66-page brief. Nor does the State make a genuine attempt to address the public's interest in the status quo, or the massive disruption to Arkansans' access to life-sustaining prescription drugs that will follow if Act 624 is not immediately enjoined.

Even on the merits, the State's brief is as remarkable for its omissions as for its inclusions. The State concedes that a law with the purpose and effect of local economic protectionism is unconstitutional, even if the statute does not discriminate on its face. But the State does not then explain how Act 624 passes muster under that standard. Rather, it says (Opp. 22-23) that Act 624 does not have the purpose or effect of local economic protectionism *because* it does not discriminate on its face. That is a non-response. Beyond that, the State relies on *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978). But despite superficial parallels between that case and this one, the facts of that case are wholly different: There, out-of-state refiners were permitted to continue selling gasoline into Maryland, just at stations they did not own. The law did not exclude the plaintiffs from selling into the state—it only affected how and where refiners could do so. Act 624, in clear contrast, categorically forbids PBM-affiliated pharmacies from providing any products or services in Arkansas *at all*. The State ignores this essential distinction.

The State likewise offers little of substance with respect to the bill of attainder claim. As we explained in the opening brief (at 25-29), the legislature found expressly in Act 624 that PBMs using affiliated pharmacies are "acting as a 'fox guarding the henhouse'

by being both a price setter and price taker." Act 624 § 1(a)(3). The accusation at the hearings—one that the State embraces in its brief (at 4, 9-10)—was that PBMs use their position as "a price setter and price taker" to reimburse their affiliated pharmacies more than unaffiliated pharmacies. Yes that describes a straightforward violation of Arkansas Code § 17-92-507 and, if proven, would furnish a basis for suspending or revoking the licenses of the offending parties (Arkansas Code § 23-92-508(c)(2))—but only "[a]fter notice and opportunity for hearing" (*id*. § 23-92-508(c)) and an opportunity for judicial review under the Arkansas APA (*id*. § 17-92-314).

The legislature afforded the targeted PBMs here no such process. Lawmakers instead leveled their accusations and adjudicated guilt, without permitting those accused an opportunity to defend themselves, and it ordered by legislative fiat the permanent revocation of their pharmacy permits. That is a bill of attainder, plain and simple.

In defending against this claim, the State does not deny the allegations that lawmakers leveled at the hearings or dispute the findings made in the preamble to the law. Instead, it insists that "Act 624 does not target Plaintiffs in terms of past conduct" (Opp. 29) and permanently revoking pharmacy permits is not punitive in any event (Opp. 30-32). Neither of those defenses holds up even to slight scrutiny. The law expressly targets PBMs for holding direct or indirect interests in pharmacy permits and thus acting as "a price setter and price taker," which is past conduct. And there is no doubting that permit revocation is punitive—the Supreme Court and Arkansas law agree on that point. Nor is it an answer to say that Act 624 serves "preventive" rather than "retributive" purposes, because the Clause admits of no such distinction. *See United States v. Brown*, 381 U.S. 437, 458 (1965). The Court accordingly should hold that plaintiffs are likely to prevail on the merits of both claims stated in the complaint.

### A. Plaintiffs are likely to succeed on the merits of their unconstitutional local protectionism claim

Few rules of constitutional law are better settled than the precept that a State may not use "its regulatory power to protect its own citizens from outside competition" in interstate markets. *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 44 (1980). As we explained in the opening brief (at 14-15), "a virtually *per se* rule of invalidity" applies "where simple economic protectionism is effected by state legislation." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978); *see National Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023) ("[N]o State may use its laws to discriminate purposefully against out-of-state economic interests.").

As the State rightly observes (Opp. 16), a state law may violate the dormant Commerce Clause if it either (1) discriminates against interstate commerce, (2) unduly burdens interstate commerce without achieving offsetting local benefits, or (3) regulates extraterritorial conduct. The parties here have asserted entitlement to relief under the first and second categories of unlawful state enactments, not the third. *See* PCMA Compl. ¶¶ 73-76, 88; ESI Compl. ¶ 107; CVS Compl. ¶¶ 174-81; Optum Compl. ¶ 157-58.

The focus of the parties' briefing has been on the first category, concerning discrimination. On that front, the State offers two responses. ***First,*** it cites *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978), which it describes as "analogous to Act 624 in all material respects" and thus controlling on the question of whether Act 624 is discriminatory in the relevant sense. *See* Opp. 17-22. ***Second,*** it acknowledges that a state law may be discriminatory on its face (if the text of the law draws express distinctions between in-staters and out-of-staters) *or* discriminatory in practice and purposes (if the law, as a practical matter and by design, "favors in-state economic interests over their out-of-state

3

counterparts"). Opp. 22 (quoting *Oregon Waste Systems v. Department of Environmental Quality of State of Oregon*, 511 U.S. 93, 93 (1994)). But, pointing to *Grand River Enterprises Six Nations v. Beebe*, 574 F.3d 929 (8th Cir. 2009), it asserts that Act 624 is not discriminatory in purpose or practical effect because it does not expressly favor in-state PBMs over out-of-state PBMs or in-state pharmacies over out-of-state pharmacies. Opp. 23. We take those two points in reverse order.

### 1.    *In both purpose and effect, Act 624 discriminates against out-of-state companies to protect in-state companies*

We showed in the opening brief (at 15-21) that Act 624 reflects a clear purpose and has the practical effect of protecting in-state economic interests by burdening out-of-state interests. *See also* ESI Br. 14-17; CVS Br. 23-30; Optum Br. 32-37.

By design, the statute will require the Board of Pharmacy to revoke permits of out-of-state companies only. Every PBM and PBM-affiliated pharmacy covered by Act 624 is a resident of some state other than Arkansas. Not a single Arkansas-based company will lose a permit under Act 624. The practical discrimination is manifest.

Moreover, discrimination (that is, local protectionism) was lawmakers' express objective: The State expressly enacted Act 624 to protect "locally-operated pharmacies," which it concluded have been "driven . . . out of business" by the tactics of out-of-state PBMs. Act 624 § 1(a)(2). Consistent with that theme, witnesses complained that billions of dollars of pharmacy business that "should be able to be filled locally" are instead "being forced to out-of-state [mail-order] pharmacies." PCMA Ex. F, at 6. A press release issued by Governor Sanders after Act 624's enactment thus praised the fact that, under Act 624, Arkansans "are finally able to get their medication locally" rather than having "to use an out of state mail order pharmacy." PCMA Ex. I, at 3.

4

The State does not directly grapple with these troubling facts. It instead offers obfuscation, asserting that "Act 624 merely provides that a PBM may not acquire or hold an Arkansas retail pharmacy permit" and "'does not make any distinction between in-state and out-of-state' PBMs or pharmacies." Opp. 23 (quoting *Grand River Enterprises*, 574 F.3d at 942). That argument conflates discrimination on the face of the statute and discrimination in practice. All agree that Act 624 does not make any express distinctions based upon residency, but that is not our claim. Our claim is, instead, that Act 624 discriminates in its operation and effect.

An example demonstrates the point: Suppose the Bears are a collegiate sports team, and they are the only team in their league that wears purple jerseys. Now suppose the Bears adopt a local rule for home games that favors "teams that wear purple jerseys." Such a rule would plainly discriminate against all away teams playing against the Bears on their home field because Bears wear purple jerseys and no one else does. It would be no response to say that the Bears' home-turf rule does not discriminate between the Bears and their away-team adversaries simply because it applies "even-handedly" to all teams that wear purple.

Just so here. Act 624's purpose is to protect "locally-operated pharmacies." Act 624 § 1(a)(2). It is therefore no accident that it was written to deny permits exclusively to out-of-state PBMs and pharmacies, while entirely sparing in-state PBMs and pharmacies, even without drawing an express distinction between the two. The drafting history makes this clear: As the law initially was drafted, Act 624 would have applied to in-state companies including Walmart (headquartered in Bentonville, Arkansas) and Harps Food Stores (headquartered in Springfield, Arkansas). When this issue was brought to lawmakers' attention, "they got that corrected" by amending the bill to ensure that no in-state companies would lose their permits. Greg Geary, *Small Pharmacies in Danger of Closing if PBM*

*Bill Doesn't Pass, State Representative Says*, White County Citizen (Mar. 27, 2025), https://tinyurl.com/bdennnse. *See also* PCMA Br. 17-18; ESI Br. 11, 16; CVS Br. 13-14, 25-26; Optum Br. 15-18. The State rejoins (Opp. 20) that lawmakers' carveout for Walmart and Harps is not discriminatory because it "would also apply to any out of state pharmacy with an in-house PBM for its employees' plan." But once again, that is just to say that Act 624 does not discriminate on its face. And a law that favors "teams that wear purple jerseys" is just the same, in practice and effect, as a law that favors the Bears. That is the case here.

*Grand River Enterprises* does not suggest otherwise. That case concerned a "master settlement agreement" reached between 50 states and two territories and several major cigarette manufacturers. 574 F.3d at 933. The challenge there was to Arkansas's implementation of the settlement by statute, which certain non-settling tobacco companies claimed "violate[d] the dormant Commerce Clause because it directly applie[d] to commerce outside Arkansas." *Id.* at 941. In finding that the implementing statute neither regulated extraterritorially nor discriminated against interstate commerce, the Eighth Circuit noted that it *neither* "make[s] any distinction between in-state and out-of-state" companies *nor* "grants [any] 'differential treatment' to in-state [companies] over out-of-state" companies. *Id.* at 942. The same cannot be said here—although Act 624 does not draw an express distinction, it *does* subject out-of-state companies to differential treatment, as we have shown.

These kinds of arguments are not novel, and neither is the requested relief. Courts routinely invalidate state laws that, although non-discriminatory on their faces, nonetheless are discriminatory in practice and purpose. *See, e.g.*, *American Trucking Associations, Inc. v. Rhode Island Turnpike & Bridge Authority*, 123 F.4th 27 (1st Cir. 2024); *Reefco*

6

*Services, Inc. v. Government of Virgin Islands*, 830 F. Appx. 81 (3d Cir. 2020); *Healthcare Distribution Alliance v. Zucker*, 353 F. Supp. 3d 235 (S.D.N.Y. 2018), *reversed in part on unrelated grounds sub nom. AAM v. James*, 974 F.3d 216 (2d Cir. 2020); *Family Wine-makers of California v. Jenkins*, 592 F.3d 1 (1st Cir. 2010); *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423 (6th Cir. 2008); *Island Silver & Spice, Inc. v. Islamorada*, 542 F.3d 844 (11th Cir. 2008). The Court should do likewise here.

### 2. The Supreme Court's decision in Exxon is distinguishable

In resisting that conclusion, the State focuses not on the text or effects of Act 624, but instead on the Supreme Court's nearly 50-year-old decision in *Exxon*. That case offers considerably less than advertised.

In *Exxon*, the Supreme Court rejected a dormant Commerce Clause challenge to a Maryland law adopted in response to the oil crisis of 1973, during which time "gasoline stations operated by producers or refiners had received preferential treatment." 437 U.S. at 121. "[T]o correct the inequities in the distribution and pricing of gasoline" during "period[s] of short supply" (*id.*), the Maryland law at issue prohibited "a producer or refiner of petroleum products" from "operat[ing] any retail service station within the State" (*id.* at 119). Although the legislative record indicated no local-protectionism objective, Exxon argued that "the effect of the statute is to protect in-state independent dealers from out-of-state competition," emphasizing that the law requires "solely . . . interstate companies" to cease operating service stations. *Id.* at 125.

The Court rejected that contention because the challenged law was facially neutral *and* did not discriminate in effect. *Id.* at 125-26. There, unlike here, many affected companies were "producers or refiners which [were] Maryland corporations, or [were] head-quartered [there], or [had] substantial facilities [there]." *Governor of Maryland v. Exxon*

*Corp.*, 370 A.2d 1102, 1114 (Md. 1977). And "[a]ll such 'Maryland' businesses [were] prohibited by the Act from operating retail service stations" just as well as the out-of-state businesses like Exxon. *Id.* Similarly, there was evidence that many independent retailers operated across state lines, and those "out-of-state . . . retailers [were] treated the same" as in-state retailers. *Id.* at 1115. Thus, "in-state" refiners and "in-state" service stations "ha[d] no competitive advantage over out-of-state" refiners or "out-of-state" service stations. *Exxon*, 437 U.S. at 126.

The same cannot be said here. Although Act 624 was originally targeted at both in-state and out-of-state companies, Arkansas lawmakers specifically amended it to ensure that the Act applies to out-of-state companies only. It assuredly is insufficient to save Act 624 from invalidation to note, as the State does (Opp. 22), that some small number of out-of-state companies (like Walgreens and Amazon) still can participate in Arkansas's independent pharmacy market. That is happenstance, and it does not alter the well-supported fact that Arkansas legislators expressly adopted Act 624 to protect local pharmacies from competition from out-of-state PBMs and their affiliated pharmacies. Arkansas' contrary implication, that a state law is unconstitutionally discriminatory only if it is *perfectly* so, would set an impossible standard not supported by the Supreme Court's cases.

*Exxon* can be distinguished on another ground: There, the out-of-state refiners were permitted to continue selling their gasoline into Maryland unobstructed. They simply had to do so at retail service stations that they did not own. The law there was thus not protectionist in the way that Act 624 is, because it didn't wholly (or even substantially) exclude the plaintiffs from selling into the state—it only affected *how* and *where* they could do so. In this way, the State is wrong to say (Opp. 17) that the law at issue in *Exxon* is analogous "in all material respects" to Act 624. The apter analogy would be a state law

that barred not PBMs, but drugmakers or drug wholesalers, from having direct or indirect interests in pharmacy permits, to ensure that all pharmacies have equal access to supplies of drugs during times of shortage. A law of that sort might survive a dormant Commerce Clause challenge under *Exxon*, because drugmakers and wholesalers would be free to continue selling the same drugs in the same volumes into Arkansas—just not at pharmacies that they own.

That is quite different from the circumstances here. Unlike the law in *Exxon*, Act 624 forbids PBMs from providing *any* pharmacy products or services in Arkansas *at all*. And the express reason for this ban on the provision of pharmacy services is that they are affiliated with out-of-state companies (PBMs) that compete directly, and effectively, with local businesses. This kind of open local protectionism and interference with competition from out-of-state was entirely absent from *Exxon*. And the Supreme Court expressly recognized the difference, explaining that "[i]f the effect of a state regulation is to cause local goods to constitute a larger share, and goods with an out-of-state source to constitute a smaller share, of the total sales in the market . . . the regulation may have a discriminatory effect on interstate commerce." *Exxon*, 437 U.S. at 126 n.16.

The State essentially asks the Court to read *Exxon* as foreclosing a dormant Commerce Clause challenge to any state law that prohibits certain corporate relationships. But it stands for no such proposition. As the First Circuit succinctly put it in rejecting a similar *Exxon* argument, "[s]tate laws that alter conditions of competition to favor in-state interests over out-of-state competitors in a market have long been subject to invalidation" under the Commerce Clause. *Family Winemakers*, 592 F.3d at 10–11.

The closer analogies are ones like *Family Winemakers* and *South Dakota Farm Bureau v. Hazeltine*, 340 F.3d 583 (8th Cir. 2003), and *Jones v. Gale*, 470 F.3d 1261 (8th

Cir. 2006), where the challenged laws were struck down. In *Family Winemakers*, the First Circuit enjoined a facially neutral Massachusetts law that allowed "small" wineries to sell directly to Massachusetts consumers while prohibiting "large" wineries from doing so. 592 F.3d at 4. The law, in practical effect, barred only out-of-state winemakers from the direct market. *Id.* And in *South Dakota Farm Bureau* and *Jones*, the court struck down a South Dakota and Nebraska law, respectively, barring out-of-state companies from "engag[ing] in farming" or "obtain[ing] an interest . . . in any real estate used for farming in this state." *South Dakota Farm Bureau*, 340 F.3d at 587-88. In those cases, the court focused on the evidence of discriminatory intent and effect based on the full record (*e.g.*, the drafting history, statements by lawmakers, and the substantive fit of the law to the state's objective), ultimately holding that "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter" cannot survive Commerce Clause review. *South Dakota Farm Bureau*, 340 F.3d at 593; *accord Jones*, 470 F.3d at 1267. Act 624 engages in the same sort of deliberate differential treatment, and it therefore must be struck down.

### 3.    *Act 624's economic protectionism also violates the Privileges and Immunities Clause*

For the same reasons that Act 624 violates the dormant Commerce Clause, so too does it violate the Privileges and Immunities Clause, which likewise forbids States from adopting laws "for the protectionist purpose of burdening out-of-state entities." *Sarasota Wine Market, LLC v. Schmitt*, 987 F.3d 1171, 1184-85 (8th Cir. 2021) (quoting *McBurney v. Young*, 569 U.S. 221, 227 (2013)). That is what Act 624 does.

The State resists this argument (Opp. 26-28) in two steps. *First*, it says that the Privileges and Immunities Clause applies only to natural persons. But that principle is no

10

barrier to relief here because PCMA is a trade association representing the interests of its members and necessarily, by extension, their employees. *See* PCMA Br. 24-25.

Associations like PCMA seek injunctive relief, not on their own behalf, but on behalf of their members, whose individual participation in the suit is not required. *See Summers v. Earth Island Institute*, 555 U.S. 488, 494 (2009); *International Union v. Brock*, 477 U.S. 274, 281-282 (1986); *Warth v. Seldin*, 422 U.S. 490, 514-15 (1975). One way to conceptualize a trade association's request for a decree on behalf of its members is a bid for a "bill of peace," which grants relief to a "small and cohesive" group of affected parties, "whether they [are] present in the action or not." *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *9 (U.S. June 27, 2025) (quoting 7A Wright, Federal Practice and Procedure § 1751, at 10). In this case, that naturally extends not only to PCMA's corporate members, but to their pharmacist employees directly impacted by Act 624. *See* PCMA Br. 24-25; Ex. B, Schryver Decl. ¶ 10; Ex. C, Cutts Decl. ¶ 10; Ex. D, Williams Decl. ¶ 10; Ex. E, Mulderry Decl. ¶ 10; Ex. L, Bisesi Decl. ¶ 12; Ex. M, Strickland Decl. ¶ 9.

Beyond that, the principle of "complete relief" requires courts to take account of "what is necessary, what is fair, and what is workable" when fashioning relief for a plaintiff showing entitlement to it. *North Carolina v. Covington*, 581 U.S. 486, 488 (2017) (quoting *New York v. Cathedral Academy*, 434 U.S. 125, 129 (1977)). In other words, it allows a court, acting in equity, "to mould each decree to the necessities of the particular case." *Trump*, 2025 WL 1773631, at *12 (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). To extend complete relief here requires protecting the rights of PCMA's members' pharmacists under the Privileges and Immunities Clause.

If the Court nonetheless concludes that PCMA may not invoke the Privileges and Immunities Clause in this case, we submit that *W. & S. Life Insurance Co. v. State Board of*

*Equalization of California*, 451 U.S. 648 (1981), should be overruled. *See Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*, 110 F. Supp. 3d 719, 730 (W.D. Tex. 2015) (noting that "[r]ecent Supreme Court precedent does suggest" that the rule adhered to in *Sarasota Wine Market* "may be ripe for reconsideration").

*Second*, the State says (Opp. 27) that "Act 624 does not discriminate against out-of-state residents" in that it "applies the same prohibition across the board regardless of a PBM's residency." That is simply wrong, for all the reasons we already have given. Unlike in *Sarasota Wine Market*, it *is* impossible for PBMs to comply with Act 624 by any means other than relinquishing their direct or indirect interests in pharmacy permits. And that is the whole point: The Privileges and Immunities Clause does not permit a State to discriminate against out-of-state residents with regard to a privilege of participating in a local market, as Act 624 does.

## B.    Plaintiffs are likely to succeed on the merits of their bill of attainder claim

We demonstrated in the opening brief (at 25-29) that Act 624 is unconstitutional for the additional reason that it is a bill of attainder. The legislature found expressly in the Act's preamble that PBMs working with affiliated pharmacies are "acting as a 'fox guarding the henhouse' by being both a price setter and price taker." Act 624 § 1(a)(3). The accusation at the hearings was that PBMs use their position as "a price setter and price taker" to reimburse their affiliated pharmacies more than unaffiliated pharmacies. *See* Opp. 4, 9-10. But as we explained, if that were truly the case, it would be a violation of Arkansas Code § 17-92-507 (*see* PCMA Br. 8, 20), which expressly forbids PBMs from engaging in such differential pricing. And a violation of that law would furnish a basis for suspending or revoking the licenses of the offending parties. Arkansas Code § 23-92-508(c)(2). But such punishment could be imposed only "[a]fter notice and opportunity for hearing" at

which the accused could defend themselves. *Id.* § 23-92-508(c). And following issuance of an order revoking a permit, the accused would be entitled to further judicial review under the Arkansas Administrative Procedure Act. *Id.* § 17-92-314. *See also* PCMA Br. 26-28; Arkansas Code § 17-92-313 (pharmacy permits).

Yet the legislature afforded no such process here, instead directing the Board to revoke plaintiffs' pharmacy permits by legislative directive, without a trial. Act 624 is thus a bill of attainder: It inflicts punishment on an expressly specified group of persons by reference to past conduct, without the benefit of a judicial process.

The State offers two responses, neither persuasive. First, it says that Act 624 "does not target Plaintiffs in terms of past conduct in a manner that designates a particular person or group." Opp. 29. Second, it says that Act 624 does not inflict punishment in the constitutional sense. Opp. 30-32. Both contentions are manifestly wrong. But before we explain why, a threshold point bears emphasis: In pressing a bill of attainder cause of action, we appreciate that claims under the Clause are rarities today. But that is only because contemporary lawmakers ordinarily know better than to violate its precepts. For its part, the Supreme Court has reaffirmed that "the Bill of Attainder Clause was intended [at the Founding] not as a narrow, technical (and therefore soon to be outmoded) prohibition, but rather as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function." *Brown*, 381 U.S. at 442. And when courts come across violations of the Clause, regardless of how infrequent that may be, they do not hesitate to grant relief. In addition to *Brown* itself, see, for example, *Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003), *Consolidated Edison Co. v. Pataki*, 292 F.3d 338 (2d Cir. 2002), and *Neelley v. Walker*, 322 F. Supp. 3d 1238 (M.D. Ala. 2018). The Court should do so here.

13

### 1. *Act 624 designates particular persons—PBMs that have affiliated pharmacies—for punishment*

The parties agree that the constitutional proscription against bills of attainder reaches only statutes that inflict punishment on a specified individual or group. *See, e.g.*, *Palmer v. Clarke*, 408 F.3d 423, 433 (8th Cir. 2005). As we noted in PCMA's opening brief (at 26), contemporary cases hold that "[t]he singling out of an individual for legislatively prescribed punishment constitutes an attainder" when individuals are "described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *WMX Technologies, Inc. v. Gasconade County, Missouri*, 105 F.3d 1195, 1202 (8th Cir. 1997); *accord Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 847 (1984) (explaining that "past activity [may] serve[] as a point of reference for the ascertainment of particular persons ineluctably designated by the legislature for punishment" (citations and quotations omitted)). And, again, that is what Act 624 does: It designates targets based on their past conduct, namely "acting as a 'fox guarding the henhouse' by being both a price setter and price taker." Act 624 § 1(a)(3).

The State asserts otherwise, insisting (at 29) that Act 624 "does [not] describe any person or group in terms of past conduct for the purpose of directing punishment." It offers two rationales.

*First*, it says (at 30) that the preamble to the statute, which singles out PBMs for acting as price takers and setters, "has no operative effect." Perhaps, but that misses the point, which is simply that it identifies expressly the parties that the legislature intended to target. And the operative text of the statute plainly accomplishes that aim, narrowly targeting only PBMs that have acquired a direct or indirect interest in a pharmacy permit. *See Selective Service System*, 468 U.S. at 848 (defining targets by the "acts committed by

14

them" is sufficient). As the plaintiffs have now repeatedly noted, moreover, the original version of the statute was initially broader, capturing entities that the legislature did *not* wish to punish. The legislature thus narrowed the statute's operative language to ensure that Act 624 would, in the words of the State itself, target only the narrow "universe of PBMs that own pharmacies" (Opp. 29), which—unlike the companies excluded by the amendment—have a "conflict of interest" as price setters and price takers (Opp. 20). The legislative history bears out this bull's-eye approach. Lawmakers and other supporters of Act 624 repeatedly called out the three largest of PCMA's members as the express targets of the statute. *See* CVS Br. 12; ESI Br. 12.

*Second*, the State contends (at 29) that our reasoning, "taken to its logical conclu-sion," would mean that "neither the States nor Congress would have the power to regulate PBMs that own pharmacies lest the law be invalidated." "The result," the State proclaims (*id.*), "would be that any legislation addressed at PBMs that own pharmacies would be invalid *per se*." That is obviously wrong. The Bill of Attainder Clause does not forbid legis-latures from adopting laws that designate regulated individuals by reference to their past conduct, without more—it forbids laws that *impose legislative punishment* on such explicit-ly targeted groups or individuals. It is to that factor we now turn.

### 2. By directing the Board to revoke permits, Act 624 inflicts both a traditional and contemporary form of punishment

**a.** The second bill-of-attainder element requires that Act 624 inflict "punishment" in the constitutional sense. The Supreme Court has articulated two distinct ways in which an enactment can impose punishment and thus qualify as an unlawful bill of attainder: First, the law may impose "burdens historically associated with punishment." *Selective Service System*, 468 U.S. at 853. If it does so, the inquiry ends. *Id.* Second, if the law "does

not inflict punishment in its historical sense" it may yet impose a non-historical form of punishment if it cannot functionally be "said to further nonpunitive goals" or if the record "evinces" only an "intent to punish." *Id.* at 852-54. We showed that by any one of these paths, Act 624 is punitive. *See* PCMA Br. 27-28.

The State commences its rejoinder (at 30) with a misdescription of the legal framework, appearing to suggest that all three inquiries—traditional punishment, nonpunitive purpose, and intent to punish—must be satisfied. Not so. Any one, taken alone, is enough. Indeed, *Selective Service System* expressly held that it is sufficient for a law to "fall within the historical meaning of forbidden legislative punishment." 468 U.S. at 853. But even if it does not, the law may instead impose "an impermissible penalty not previously held to be within the proscription against bills of attainder" and thereby violate the Clause. *Id.* Meanwhile, the Eighth Circuit has confirmed that under the second approach, a law may be either "functionally punitive" or "punitive under [a] motivational test." *WMX Technologies*, 105 F.3d at 1202-1203.

**b.** We showed that Act 624 imposes punishment in the traditional sense. PCMA Br. 27-28. PBMs are barred by from holding, directly or indirectly, a permit to operate a pharmacy and thus to participate in the profession of pharmacy. The State disagrees, asserting (at 31) that "merely prohibit[ing] PBMs from acquiring or holding a permit . . . 'to maintain a pharmacy'" (quoting Arkansas Code § 17-92-405(a)(1)) is not the same as disqualifying a priest from practicing as a clergyman or a lawyer from practicing as an attorney. In the State's view (*id.*), to specify "that certain entities (PBMs) cannot hold a permit" "says nothing about the practice of [the] profession" for which the permit is required.

To state that position is to refute it. Suppose, for example, that every law firm were required to obtain its own permit to operate from the State, separate and apart from the

licenses held individually by the lawyers practicing there. Can there really be any doubt that the State would violate the Bill of Attainder Clause to pass a law revoking a law firm's permit based on lawmakers' unproven assertions that the firm had committed some regulatory infraction? Surely not. The State in that scenario would undeniably be "punishing without trial specifically designated persons or groups." *Selective Service System*, 468 U.S. at 847 (quotations and citation omitted). And it would do so by erecting an "absolute barrier[]" to the firm's participation in a "certain profession[]." *Id.* at 850-51.

That is the case here: Act 624 erects an absolute barrier to PBMs' participation in the profession of pharmacy, because the "status" that the law forbids (being a PBM with a direct or indirect interest in a pharmacy permit) is wholly unavoidable as a condition for the PBM to be able to engage lawfully in that profession. *Id.*

Nor can there be any doubting the State's revocation of a permit is an inherently punitive act from a contemporary perspective, as well. Generally speaking, "[a] license is 'a right or permission granted in accordance with law to engage in some business or occupation, to do some act, or to engage in some transaction which but for such license would be unlawful.'" *Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582, 595 (2011) (alteration incorporated) (quoting Webster's Third New International Dictionary 1304 (2002)). Further, "[S]tate-issued authorizations for foreign businesses to operate within a State" are generally understood to be "licenses." *Id.* at 596.

Revocation of such authorization is by definition punitive. As we noted in the opening brief (at 27-28), the Board of Pharmacy itself describes permit revocation as a penalty or sanction. So does the federal Administrative Procedure Act, which defines a reviewable agency "sanction" to include "revocation, or suspension of a license," on par with a "penalty or fine" and a "prohibition, requirement, limitation, or other condition af-

17

fecting the freedom of a person." 5 U.S.C. § 551(10); *see also Walmart Inc. v. United States Department of Justice*, 517 F. Supp. 3d 637, 650 (E.D. Tex.) (citing 5 U.S.C. § 551(10) as enumerating "concrete punishments that agencies impose on regulated entities" including "revocation or suspension of a license"), *affirmed*, 21 F.4th 300 (5th Cir. 2021).

Again, the punitive nature of a permit revocation is precisely why Arkansas law requires notice and an opportunity to be heard, followed by judicial review. Such procedural protections would be unnecessary unless revocation is a serious punishment. We made this point in the opening brief (at 27-28), but the State does not address it.

**c.** Act 624 also effectively banishes PBM-affiliated pharmacies from the State, which is another form of traditional punishment. *See* ESI Br. 10, 19-20. The State disagrees (Opp. 31), asserting (again) that the Act "provides only that a PBM cannot acquire or hold a retail pharmacy permit," meaning that any pharmacy may "continue to hold a retail pharmacy permit in Arkansas so long as it does not operate as a PBM." But that ignores the reality of corporate identity. If a CVS retail pharmacy must disassociate from CVS and become *some other* retail pharmacy in order to continue operating in the State, then in a very real way, CVS retail pharmacies are banished—whatever entity remains to sell drugs in Arkansas simply is not a CVS retail pharmacy. The same goes for the Optum-affiliated Genoa pharmacies in Arkansas—if those pharmacies must dissociate from Optum, they will cease to be Genoa pharmacies, which will in effect be banished from the State.

Matters are no different with respect to any affiliated mail-order pharmacies. The State asserts (at 31) that "Express Scripts can operate as a PBM in Arkansas so long as it does not hold a [mail-order] pharmacy permit." That is true, but in that case, Express Scripts' mail-order pharmacy effectively would be banished from the State. Alternatively, "Express Scripts can . . . continue to hold a [mail-order] pharmacy permit in Arkansas so

18

long as it does not operate as a PBM" in the state. *Id.* That is also true, but in that case, Express Scripts' PBM effectively would be banished from the State. In either case, an entity—the PBM or the PBM's affiliated pharmacy—would be banished. *See Nelson v. Town of Paris*, 78 F.4th 389, 398 (7th Cir. 2023) (defining banishment as expulsion from, or a bar to reentry into, a community) (citing *Smith v. Doe*, 538 U.S. 84, 98 (2003)).

It is thus a non-response for the State to observe blithely that "Act 624 will simply prohibit companies from operating in the State under the particular business combination of a PBM and pharmacy." Opp. 32. While that is true as far as it goes, the State ignores the upshot: One company of two is being forced out of the State.

**d.** Because Act 624 imposes historical punishment, the Court need go no further. *Selective Service System*, 468 U.S. at 853; *Brown*, 381 U.S. at 458. But it bears emphasis all the same that Act 624 is punitive under the functional and motivational tests as well. *See* PCMA Br. 28-29; ESI Br. 20. In response to this point, the State offers just two cursory sentences (Opp. 32): "[T]he legislative history of Act 624 demonstrates that it was designed to remove the current and inherent conflict of interest that arises when PBMs own pharmacies and thus are incentivized to favor their own pharmacies over others. This is a valid non-punitive exercise of police power by the legislature." That assertion simply ignores the gravamen of the claim, which is that lawmakers had concluded this "conflict of interest" was leading to violations of Arkansas Code § 17-92-507, warranting the punishment of permit revocation. It is *not* a "non-punitive exercise of police power" (Opp. 32) to inflict a quintessential regulatory punishment on a discretely-defined group of companies "to hold [them] accountable for their anticompetitive actions" (PCMA Ex. K, at 2).

This is therefore one of those rare cases where a grant of relief under the Bill of Attainder Clause is warranted.

### C.    The remaining preliminary injunction factors favor immediate relief

**1.**    Plaintiffs in all four cases have shown manifest irreparable injuries. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024) (citation omitted). As the plaintiffs in all four cases showed extensively in their opening briefs (PCMA Br. 29-33; ESI Br. 25-31; CVS Br. 43-46; Optum Br. 45-47), affected PBMs will face numerous kinds of irreparable harms. The State, for its part, leaves these points essentially uncontested:

***First*,** all of plaintiffs and PCMA's members will suffer substantial and immediate financial losses absent a preliminary injunction, reaching hundreds of millions of dollars. *See, e.g.*, Accetta Decl. (CVS Dkt. 12-1) ¶¶ 28-30; Stidman Decl. (Optum Dkt. 45) ¶¶ 33-34, 57-59. Financial losses made unrecoverable by operation of sovereign immunity "constitute[] an irreparable injury." *Missouri v. Trump*, 128 F.4th 979, 996 (8th Cir. 2025). *See also Iowa Utilities Board v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) ("The threat of unrecoverable economic loss, however, does qualify as irreparable harm.").

***Second*,** all of plaintiffs and PCMA's members will see their business models irrevocably altered or disrupted and their reputations tarnished. *See, e.g.*, Dube Decl. (PCMA Ex. A) ¶¶ 19-24; Harrison Decl. (PCMA Ex. N) ¶ 20; Peppers Decl. (ESI Dkt. 19) ¶ 30; Stidman Decl. (Optum Dkt. 45) ¶¶ 44-47. As courts have held, "the destabilization of [the plaintiff's] business model and erosion of its institutional goodwill" is not a "readily compensable harm" and thus constitutes an irreparable injury. *Choreo, LLC v. Lors*, --- F. Supp. 3d ---, 2025 WL 973194, at *12 (S.D. Iowa 2025); *see also Iowa Utilities Board*, 109 F.3d at 426 ("[P]otential loss of consumer goodwill qualifies as irreparable harm.").

*Third,* the closure of a pharmacy "may [make customers] unsure whether they can get their prescriptions filled at that location" in the future and ineluctably results in the loss of intangible assets, constituting irreparable injury. *Medicine Shoppe International, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (quoting *United Healthcare Insurance Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) (applying Minnesota law); *accord Choreo*, 2025 WL 973194, at *12-*13.

The State's only rejoinders are three, curt *ipse dixits*. First, it says (Opp. 66) that "Act 624 does not go into effect until January 1, 2026." Sure, but as the plaintiffs' declarants have made clear, affected PBMs must begin taking immediate and irremediable steps to come into compliance; indeed, injuries have already occurred. *See, e.g.*, ESI Br. 31; CVS Br. 45. Next, the State says (Opp. 66) that "Plaintiffs can avail themselves of Act 624's exceptions in the interim, which would allow at least some of the Plaintiffs to continue operating as both a PBM and a pharmacy through 2027." True or not, preventing the closure of "at least some" pharmacies plainly would not prevent the bulk of the irreparable harms proven. *See, e.g.*, ESI Br. 34. Finally, the State says (Opp. 66) that "any harm faced by Plaintiffs is not irreparable because Plaintiffs may be able to seek reinstatement of their retail pharmacy permits if they prevail." But reinstatement of previously revoked permits would, at most, allow for prospective relief—not remediation of retrospective injuries, which would be barred by sovereign immunity. And the reason that harms to business models and reputations are irreparable is because they cannot simply be restored with a wave of the wand—these harms are permanent. *See Choreo*, 2025 WL 973194, at *12-*13; *Mercy Health Services-Inc. v. Efstratiadis*, 579 F. Supp. 3d 1096, 1104-06 (N.D. Iowa 2022).

21

**2.** The balance-of-equities factor requires the Court to "weigh 'the threat of irreparable harm' shown by the movant against 'the injury that granting the injunction will inflict on other parties.'" *MPAY Inc. v. Erie Custom Computer Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (quoting *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). The public interest factor similarly calls on the court to balance the specific "interests that might be injured" with the "public interests that will be served." *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997-998 (8th Cir. 2011).

The State does not deny that it "has no interest in enforcing laws that are unconstitutional" (*Brandt v. Rutledge*, 551 F. Supp. 3d 882, 892 (E.D. Ark. 2021)) or that the public always has a strong interest in ensuring that government actors comply with the Constitution. Nor does it respond to our showing that the public interest strongly favors protecting Arkansas' reliable access to drugs at their established pharmacies. *See* PCMA Br. 33-34, ESI Br. 32-35; CVS Br. 46-47; Optum Br. 47-48.

The State's only response concerning the public interest is to say (Opp. 66) that "the harm that will flow to Defendants if Act 624 is enjoined is *per se* irreparable" because "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." Whatever the merit to that assertion, it is a purely abstract one, and it does not remotely outweigh the overwhelming, concrete harms to plaintiffs and the public that would follow if Act 624 were allowed to come into effect while this litigation is pending. Arkansas has lived with the current status quo since time out of mind—no great harm will follow if the status quo is maintained for a few months longer, to allow the Court to enter final judgment on the merits. And if any of the regulatory or antitrust violations that Arkansas imagines were actually taking place, it can enforce the laws that it already has on the books.

**CONCLUSION**

The Court should grant a preliminary injunction against the individuals defendants in their official capacities staying enforcement of Act 624 as soon as practicable and for the duration of this litigation.[1]

Dated: July 18, 2025                                          Respectfully submitted,

                                                                          /s/ *Michael B. Kimberly*

David S. Mitchell, Jr. (Ark. Bar 2010271)         Michael B. Kimberly*
   Rose Law Firm,                                     Linda M. Blair*
   a Professional Association                          Winston & Strawn LLP
   120 East Fourth Street                                1901 L Street NW
   Little Rock, AR 72201                                 Washington, DC 20036
   (501) 375-9131                                             (202) 282-5096
   dmitchell@roselawfirm.com                       mkimberly@winston.com
                                                                             lblair@winston.com

Tyler D. Mlakar (Ark. Bar 2022150)
   Rose Law Firm,                                     * admitted *pro hac vice*
   a Professional Association
   809 S. 52nd St., Ste. A
   Rogers, AR 72758
   (479) 301-2444
   tmlakar@roselawfirm.com

---

[1] The State asserts (Opp. 64-65) that the Board of Pharmacy is entitled to Eleventh Amendment immunity. That would be true only if the Board of Pharmacy were an arm of the State, which does not follow automatically from its denomination as an "agency." But the Court need not resolve that issue, because an injunction against the individual defendants in their official capacities will afford plaintiffs full relief.