# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

EXPRESS SCRIPTS, INC.; EXPRESS
SCRIPTS PHARMACY, INC.; ESI MAIL
PHARMACY SERVICE, INC; EXPRESS
SCRIPTS SPECIALTY DISTRIBUTION
SERVICES, INC.; ACCREDO HEALTH
GROUP, INC.; LYNNFIELD DRUG, INC.
d/b/a FREEDOM FERTILITY PHARMACY;
LYNNFIELD COMPOUNDING CENTER,
INC. d/b/a FREEDOM FP FERTILITY
PHARMACY; and VILLAGE FERTILITY
PHARMACY, LLC,

        Plaintiffs,

        v.

RODNEY RICHMOND, BRIAN JOLLY,
DEBBIE MACK, LENORA NEWSOME,
CLINT BOONE, WALTER LYN FRUCHEY,
HAROLD H. SIMPSON, and BETH ANN
DAVENPORT, in their official capacities as
board members of the Arkansas State Board of
Pharmacy; and JOHN C. KIRTLEY, in his
official capacity as executive director of the
Arkansas State Board of Pharmacy,

        Defendants.

Case No. 4:25-cv-520-BSM

Consolidated with Case Nos.:
4:25-cv-524-BSM
4:25-cv-561-BSM
4:25-cv-598-BSM

## REPLY IN SUPPORT OF ESI PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

I.    ESI Is Likely To Succeed On The Merits Of Each Claim ............................................ 3

    A.    Act 624 Is Unconstitutionally Protectionist Under The Dormant Commerce Clause And The Privileges And Immunities Clause .................................................. 3

        1.    Dormant Commerce Clause ................................................................. 3

        2.    Privileges And Immunities Clause ....................................................... 8

    B.    Act 624 Is A Bill Of Attainder ............................................................................. 9

    C.    Act 624 Is Preempted By TRICARE .................................................................. 11

II.   The Remaining Preliminary-Injunction Factors Favor Injunctive Relief ........... 15

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arkansas Blue Cross & Blue Shield v. St. Mary's Hospital, Inc.*, 947 F.2d 1341
(8th Cir. 1991)................................................................................................13, 14

*Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263 (1984) ...............................................2, 3, 4

*Brandt v. Rutledge*, 551 F.Supp.3d 882 (E.D. Ark. 2021)............................................17

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993).........................7

*Cachia v. Islamorada*, 542 F.3d 839 (11th Cir. 2008)...............................................5, 8

*Ex parte Young*, 209 U.S. 123 (1908).................................................................16

*Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978) ........................................4, 5

*Family Winemakers of California v. Jenkins*, 592 F.3d 1 (1st Cir. 2010) ...................................5, 9

*Hacker v. Barnhart*, 459 F.3d 934 (8th Cir. 2006) ..................................................4, 12

*IESI AR Corp. v. Northwest Arkansas Regional Solid Waste*, 433 F.3d 600
(8th Cir. 2006)................................................................................................2, 3, 6

*In re Aurora Dairy Corp. Organic Milk Marketing & Sales Practices Litigation*,
621 F.3d 781 (8th Cir. 2010) ..........................................................................14, 15

*In re Kavolchyck*, 164 B.R. 1018 (S.D. Fla. 1994) .......................................................10

*Iowa Utilities Board v. FCC*, 109 F.3d 418 (8th Cir. 1996)............................................16

*Johnson v. Griffin*, 69 F.4th 506 (8th Cir. 2023) .......................................................16

*Leslie Miller Inc. v. Arkansas*, 352 U.S. 187 (1956) ....................................................13

*Maryland v. King*, 567 U.S. 1301 (2012) ................................................................17

*McBurney v. Young*, 569 U.S. 221 (2013) ..................................................................8

*Minnesota ex rel. Hatch v. Hoeven*, 456 F.3d 826 (8th Cir. 2006)..................................8

*Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025).......................................................17

*National Pork Producers Council v. Ross*, 598 U.S. 356 (2023) ................................8, 9

*Nebraska Public Power District v. MidAmerican Energy Co.*, 234 F.3d 1032 (8th Cir. 2000)..................................................................................................14

*Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) ....................................9, 10, 11

*Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190 (1983).............................................14

*Palmer v. Clarke*, 408 F.3d 423 (8th Cir. 2005)................................................................9

*Par v. Wolfe Clinic, P.C.*, 70 F.4th 441 (8th Cir. 2023) ...................................................7

*Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905 (8th Cir. 2020) ..............................17

*Price v. Forrest*, 173 U.S. 410 (1899) ............................................................................10

*Rogers Group, Inc. v. City of Fayetteville*, 629 F.3d 784 (8th Cir. 2010) .....................................16

*Sarasota Wine Market, LLC v. Schmitt*, 987 F.3d 1171 (8th Cir. 2021).........................................8

*United States v. Brown*, 381 U.S. 437 (1965)....................................................................9

*United States v. Gates*, 915 F.3d 561 (8th Cir. 2019) ....................................................14

*United States v. Lovett*, 328 U.S. 303 (1946).................................................................9

## FEDERAL STATUTES AND REGULATIONS

10 U.S.C.
 §1071....................................................................................................14
 §1073....................................................................................................14
 §1074g..................................................................................................14
 §1103...............................................................................................2, 12

32 C.F.R.
 §199.17.................................................................................................12
 §199.21............................................................................................12, 14

## STATE STATUTES

Ark. Code Ann.
 §4-75-302.............................................................................................7
 §17-92-313..........................................................................................11
 §17-92-315..........................................................................................11
 §17-92-507............................................................................................6
 §23-92-506............................................................................................6
 §23-92-603............................................................................................7
 §23-92-604............................................................................................7

## LEGISLATIVE MATERIALS

Act 514 (S.B. 104), 95th Gen. Assemb., Reg. Sess. (Ark. 2025) ...................................................6, 7

Act 624 (H.B. 1150), 95th Gen. Assemb., Reg. Sess. (Ark. 2025) ...................................... *passim*

*Hearing on H.B. 1150 Before the Arkansas Senate Insurance and Commerce
    Committee* (Apr. 8, 2025) (statement of Sen. Boyd), https://sg001-
    harmony.sliq.net/00284/Harmony/en/PowerBrowser/PowerBrowserV2/20
    250408/-1/31028?mediaStartTime=20250408102505#info.................................................7

Segal, *Purpose of Bill: HB 1150*, *Pricing Approach and Comments* (Mar. 17,
    2025), https://arkleg.state.ar.us/Home/FTPDocument?path=%2F
    Assembly%2F2025%2F2025R%2FFiscal+Impacts%2FHB1150-
    Other1.pdf ...........................................................................................................................7

## OTHER AUTHORITIES

Defense Health Agency, *TRICARE Pharmacy Program Handbook* (Jan. 2025),
    https://tricare.mil/-/media/Files/TRICARE/Publications/Handbooks/TRIC
    ARE_Pharmacy_HB_FINAL_508c.pdf ............................................................................13

## INTRODUCTION

Defendants' opposition provides absolutely no basis to deny ESI's requested preliminary injunction.  Defendants all but concede that Arkansas Act 624 is inflicting and will continue to inflict irreparable harms not only on ESI, by disrupting relationships built over years with patients, health plan sponsors, and drug manufacturers, but also on the public, by restricting patient choice and access to life-saving medications.  ESI's opening brief contained *ten pages* of argument, supported by dozens of pages of sworn declarations from business professionals and patients, detailing these harms.  Defendants respond with *three sentences*, ignoring ESI's now-undisputed evidence and making arguments ESI already refuted.  For instance, Defendants claim (Opp.66) that the harms Act 624 will inflict are not irreparable because "Plaintiffs may be able to seek reinstatement … if they prevail at a trial."  But unrebutted evidence shows that patients, plan sponsors, and manufacturers must make arrangements months or years in advance and thus are unlikely either to wait for a trial to play out (for example, patients cannot simply forgo their medications in the interim) or return to ESI after having been forced to sever ties and turn elsewhere.  In short, Defendants make no serious effort to contest that absent a preliminary injunction, ESI – and the public, *i.e.*, real Arkansans – will suffer grave and irreversible harm.

Defendants instead focus on likelihood of success.  But their arguments on that front fare no better.  To the contrary, those arguments underscore that Act 624 is unconstitutionally protectionist (in violation of the dormant Commerce Clause and Privileges and Immunities Clause), unconstitutionally punitive (in violation of the prohibition on bills of attainder), and preempted by the federal military healthcare program known as TRICARE.

To start, Defendants effectively concede that Act 624 violates the dormant Commerce Clause, by neither disputing the statute's local-protectionist motive nor attempting to show that

the statute is necessary to serve legitimate interests.  That is enough to succeed on this claim because discrimination against interstate commerce may be established solely "on the basis of … discriminatory purpose," *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270 (1984), and such a discriminatory state law violates the dormant Commerce Clause "unless the state … 'has no other means to advance a legitimate local interest,'" *IESI AR Corp. v. Northwest Arkansas Regional Solid Waste*, 433 F.3d 600, 604 (8th Cir. 2006).  Because Defendants answer neither point, their remaining arguments are irrelevant.  They are also wrong.  In particular, Defendants' argument that a law cannot have a discriminatory effect if it does not discriminate against *every* out-of-state market participant rests on a misinterpretation of Supreme Court precedent that courts of appeals have consistently rejected.  ESI is thus likely to succeed on both its dormant Commerce Clause claim and, for similar reasons, its Privileges and Immunities Clause claim.

Defendants' responses to ESI's bill-of-attainder claim are equally meritless.  For example, Defendants rely (Opp.32) on a facially absurd distinction between being "banished" and "simply prohibit[ed] … from operating in the State."  Similarly, they contend (Opp.31) that although Act 624 "provides … that certain entities (PBMs) cannot hold a [pharmacy] permit," the statute "says nothing about the practice of [the] profession" of pharmacy.  Such dubious distinctions do nothing to diminish the force of ESI's bill-of-attainder claim.

Finally, Defendants have no cogent response to ESI's TRICARE-preemption claim. Indeed, they do not respond at all to ESI's argument that Act 624 is *expressly* preempted by the federal statute providing that state laws "relating to … health care delivery … shall not apply to any [TRICARE] contract," 10 U.S.C. §1103(a).  That is enough for ESI to succeed on this claim. And Defendants' only argument – that the State Board of Pharmacy has discretion to grant "limited use permits" (Opp.63) – does nothing to undermine the clear evidence ESI presented

2

that Act 624 will impede TRICARE's mail-order program and is therefore *implicitly* preempted as well.  Supreme Court precedent squarely forecloses such state discretionary power over a federal program.  And in any event, the temporary permits the Board has authority to issue are both far too narrow (covering only limited distribution, rare, or orphan drugs) and far too temporary to avoid serious interference with TRICARE.

## ARGUMENT

### I.    ESI IS LIKELY TO SUCCEED ON THE MERITS OF EACH CLAIM

The likelihood-of-success factor supports an injunction if Plaintiffs will likely succeed on even one of their claims.  In fact, Plaintiffs will likely succeed on all of their claims.

#### A.    Act 624 Is Unconstitutionally Protectionist Under The Dormant Commerce Clause And The Privileges And Immunities Clause

##### 1.    Dormant Commerce Clause

A state law that discriminates against interstate commerce "in purpose *or* in effect" violates the dormant Commerce Clause "unless the state can show, 'under rigorous scrutiny, that it has no other means to advance a legitimate local interest.'"  *IESI*, 433 F.3d at 604 (emphasis added); *see also Bacchus*, 468 U.S. at 272.  As explained in ESI's opening brief (at 14-16), Act 624 discriminates against interstate commerce in both ways:  It has a discriminatory purpose, as shown by its text and legislative history, and its effect is to bar only out-of-state entities from operating in Arkansas.  Such discrimination is unconstitutional because Act 624's only purported legitimate purposes are entirely pretextual.  *See* ESI Br.16-17.  Defendants offer no sound response.

*Purpose*.  Defendants do not address ESI's showing (Br.14-15) that local protectionism is Act 624's purpose.  Indeed, even the amicus brief of the National Community Pharmacists Association and Arkansas Pharmacists Association – a brief supporting the state – candidly

admits (at 6) that Act 624 was enacted out of "particular concern" about PBM-affiliated pharmacies' "effects on community pharmacies." In any event, Defendants' "failure to … discuss [this] issue" constitutes "abandonment" of any opposition to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 n.2 (8th Cir. 2006). And Defendants' abandonment is dispositive because a "finding that state legislation constitutes 'economic protectionism' may be made" solely "on the basis of … discriminatory purpose," *Bacchus*, 468 U.S. at 270.

*Effect*. Independently, Defendants fail to undermine ESI's argument (Br.16) that Act 624 also has the effect of discriminating against interstate commerce. The case on which Defendants primarily rely (Opp.17-22) – *Exxon Corporation v. Governor of Maryland*, 437 U.S. 117 (1978) – does not help them. To the contrary, *Exxon* explains that a "regulation may have a discriminatory effect on interstate commerce" if its "effect … is to cause local goods to constitute a larger share, and goods with an out-of-state source to constitute a smaller share, of the total sales in the market." *Id.* at 126 n.16. That is the situation here; as predicted in a press release issued by Governor Sanders, Act 624 will force patients to "get their medication locally" rather than from "out of state." Press Release, Governor Sanders, Sanders Signs Legislation to Ban Anti-Competitive PBM Practices (Apr. 16, 2025), *cited in* ESI Br.15.

Defendants do not disagree; they merely speculate (Opp.22) that ESI's market share "may" shift to other (non-PBM-affiliated) pharmacies based outside of Arkansas. That speculation, however, ignores that Act 624 requires ESI to provide its Arkansas patients with a "list of *Arkansas* pharmacies" – not any out-of-state pharmacies – to which ESI's patients may transition. Act 624 §2, to be codified as Ark. Code Ann. §17-92-417(b)(3)(A), (c)(2). Moreover, Defendants' speculation is at odds with Act 624's legislative finding that the statute

will prevent "locally operated pharmacies" from going "out of business," Act 624 §1(a)(2), presumably by increasing their market share.

Contrary to Defendants' suggestion (Opp.20), Act 624 need not apply to *every* out-of-state pharmacy owner to have a discriminatory effect under *Exxon*. Indeed, courts of appeals have consistently rejected such a requirement. The First Circuit has held a law discriminatory in effect even though its regulation of "large" wineries (which were all out-of-state) did not apply to other (small) out-of-state wineries. *Family Winemakers of California v. Jenkins*, 592 F.3d 1, 12-13 (1st Cir. 2010). Likewise, the Eleventh Circuit has found discriminatory effect where an ordinance prohibiting chain restaurants "disproportionately target[ed] restaurants operating in interstate commerce," even though it did not bar *non*-chain restaurants and therefore did "not prevent all out-of-state restaurants from entering the local market." *Cachia v. Islamorada*, 542 F.3d 839, 842-843 (11th Cir. 2008).

Defendants brush these cases aside in a footnote, claiming (Opp.19 n.6) that "*Exxon* forecloses" their reasoning. But these cases expressly distinguished *Exxon* for reasons that apply equally here. *Family Winemakers* explained that "*Exxon* is not apposite where, as here, there is an in-state market and the law operates to its competitive benefit." 592 F.3d at 13. Similarly, *Cachia* recognized that while "*Exxon* rejected the notion 'that the Commerce Clause protects [a] particular structure or method[] of operation in a retail market'" – a point Defendants repeatedly invoke (Opp.22, 24) – the ordinance at issue there was discriminatory because its "complete prohibition of chain restaurants sharing certain characteristics amount[ed] to more than the regulation of methods of operation, and serve[d] to exclude national chain restaurants from competition in the local market." 542 F.3d at 843. So too here: Act 624 operates to exclude national PBM-affiliated pharmacies from competition in Arkansas.

*Legitimate interest/alternative means*.  Even if Act 624 served legitimate interests, Defendants never even contend that the state "has *no other means* to advance" those interests, *IESI*, 433 F.3d at 604 (emphasis added).  That failure suffices to establish that Act 624's discrimination against interstate commerce violates the dormant Commerce Clause.

In any event, Defendants fail to show that Act 624 actually serves legitimate interests. The alleged "anticompetitive business tactics" that Defendants say Act 624 prevents (Opp.25), are already illegal in Arkansas.  For instance, Defendants repeatedly state (Opp.5-6, 8-9) that PBMs "set the prices" of drugs for independent pharmacies and favor affiliates over competitors by reimbursing independent pharmacies at lower rates.  But none of that is true:  PBMs do not set drug prices – drug manufacturers do, and plan sponsors negotiate with PBMs over how much the plan sponsors will pay for those drugs, while PBMs negotiate reimbursement rates with pharmacies.  *See* ESI Compl. ¶¶27-34, 39.  Nor can PBMs reimburse independent pharmacies less because, as explained in ESI's complaint (¶¶93-94) and opening brief (at 16-17), Arkansas law already prohibits that, Ark. Code Ann. §23-92-506(b)(4)(A), and likewise prohibits PBMs from reimbursing any pharmacy less than what it paid to buy the drug, *id.* §17-92-507(c). Defendants ignore all of that, basing their claims about PBMs' conduct in Arkansas (Opp.4, 12-13) on flawed Federal Trade Commission reports that cite *no evidence from the state*.

Defendants also highlight concerns (Opp.11) about PBMs "steer[ing] patients to their own pharmacies."  But as Defendants' brief elsewhere notes (Opp.8), "Arkansas already has laws on the books that prohibit steering."  Indeed, on April 10 of this year (before Act 624 was enacted), Arkansas passed a law prohibiting PBMs and their affiliates from "[e]ngaging in any conduct that unlawfully restricts, limits, or interferes with an enrollee's right to choose a pharmacy or pharmacist," including "improperly steer[ing] enrollees to a specific pharmacy or

pharmacist." Act 514 §4(a)(2)(H)(i). And even before that, Arkansas law both prohibited PBMs from "[c]oerc[ing] a patient into using a mail-order pharmacy," Ark. Code Ann. §23-92-604(a)(1), and required PBMs to afford patients "the freedom to use any pharmacy or any provider the patient chooses," *id*. §23-92-603(4).

Finally, Defendants suggest (Opp.10) that Act 624 serves an anti-monopoly interest. But there is no evidence of any monopoly, and any such suggestion is obviously false given the many PBM-affiliated pharmacies that compete with one another – as reflected by the wide range of plaintiffs in these consolidated cases. In any event, Arkansas already has an anti-monopoly law. *See* Ark. Code Ann. §4-75-302. And the clear intent of Act 624 is to protect local pharmacies by *reducing* competition – the exact opposite of an anti-monopoly purpose, as "[i]t is axiomatic that the antitrust laws were passed for 'the protection of *competition*, not *competitors*,'" *Par v. Wolfe Clinic, P.C.*, 70 F.4th 441, 446 (8th Cir. 2023) (alteration in original) (quoting *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993)). Indeed, as noted in ESI's opening brief (at 12, 15), Act 624's own fiscal-impact statement confirms the law will result in "less competition," Segal, *Purpose of Bill: HB 1150*, *Pricing Approach and Comments* (Mar. 17, 2025), and a key proponent of Act 624 in the Senate justified the bill by noting that Arkansas currently has "more pharmacies than we probably need," *Hearing on H.B. 1150 Before the Arkansas Senate Insurance and Commerce Committee* (Apr. 8, 2025) at 12:05:30 PM (statement of Sen. Boyd). Once again, Defendants simply ignore these central points.

Nor have Defendants shown that any of these interests remotely outweigh Act 624's burden on interstate commerce, instead repeatedly insisting (Opp.25) that Plaintiffs will "merely" have to choose whether to operate as a PBM or a pharmacy. But that is akin to telling the chain restaurants in *Cachia* that they can "merely" choose to operate as independent (non-

chain) restaurants, or telling the large wineries in *Family Winemakers* that they can "merely" choose to become small wineries. In each case, this "amounts to more than the regulation of methods of operation." *Cachia*, 542 F.3d at 843. As explained in ESI's complaint (¶8), "[d]ismantling the[ir] organization[s] in this way is not practical or feasible, because ESI and its affiliated pharmacies have long-standing, deeply-interwoven common ownership and business relationships," which are "precisely what enable ESI to provide critical, safe, and affordable pharmacy services to tens of thousands of Arkansans." Defendants, yet again, are silent on this point.

In sum, Defendants effectively concede Act 624's protectionist purpose, fail to rebut its protectionist effect, and identify no actual legitimate interests served by the law, let alone interests that outweigh Act 624's protectionism and could not be served in other ways. ESI is therefore likely to succeed on its dormant Commerce Clause claim.

### 2.    Privileges And Immunities Clause

For similar reasons, ESI will likely succeed on its Privileges and Immunities Clause claim. As explained in ESI's opening brief (at 17-18), Act 624 was "enacted for the protectionist purpose of burdening out-of-state citizens" by depriving them of "the privilege of pursuing [their professional] calling," *McBurney v. Young*, 569 U.S. 221, 227 (2013), and no "sufficient justification exists for the discrimination," *Minnesota ex rel. Hatch v. Hoeven*, 456 F.3d 826, 834 (8th Cir. 2006). Defendants respond (Opp.26) by citing a case holding that the Privileges and Immunities Clause applies only to natural persons, *Sarasota Wine Market, LLC v. Schmitt*, 987 F.3d 1171, 1179 (8th Cir. 2021). But they ignore that the validity of that case is called into question by *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), a case brought by *corporate* plaintiffs in which the Supreme Court indicated that "the Privileges and Immunities Clause" may embody the Constitution's general interstate "antidiscrimination principle," *id*. at

370.  Defendants note (Opp.27) that Act 624 does not explicitly distinguish between in-state and out-of-state residents.  But as with the dormant Commerce Clause, that does not disprove that Act 624 was enacted for local-protectionist purposes, *see* ESI Br.14; *Family Winemakers*, 592 F.3d at 12-13.  Likewise, as explained, Defendants' assertion (Opp.28) that ESI can "continue to operate in Arkansas … as either a PBM or a pharmacy, but not both" ignores the undisputed fact that dismantling ESI's organizations is not feasible, *see* ESI Compl. ¶8.

### B.     Act 624 Is A Bill Of Attainder

As explained in ESI's opening brief (at 18-21), Act 624 satisfies each of the three bill-of-attainder elements:  It "(1) specif[ies] the affected persons" – namely, PBMs affiliated with pharmacies; "(2) impose[s] punishment" – specifically, license-revocation and banishment from the state; and "(3) lack[s] a judicial trial."  *Palmer v. Clarke*, 408 F.3d 423, 433 (8th Cir. 2005).  Defendants concede the third element (Opp.32).  They dispute the first two, but their arguments lack merit.

Act 624 easily meets the first element (specification).  The law's text expressly targets "pharmacy benefits manager[s]," defined to include any PBM-affiliated pharmacy.  Act 624 §2, to be codified as Ark. Code Ann. §17-92-416(a).  That is an "easily ascertainable … group," *United States v. Lovett*, 328 U.S. 303, 315 (1946); in fact, Defendants concede (Opp.29) that "the universe of PBMs that own pharmacies" is "a narrow one."  They nonetheless argue (*id.*) that there is no specification "because Act 624 does not target Plaintiffs in terms of past conduct in a manner that designates a particular person or group."  But specification by past conduct is one way, not the only way, that a statute may designate a particular person or group for bill-of-attainder purposes.  It is enough for a law to "simply describe[]" its targets, *United States v. Brown*, 381 U.S. 437, 442 (1965), such that they are "easily ascertainable," *Lovett*, 328 U.S. at 315, or "easily identifiable," *Nixon v. Administrator of General Services*, 433 U.S. 425, 469

(1977).  As Defendants concede, that is true here.  Moreover, because specification is not the *sole* bill-of-attainder element, Defendants are wrong to protest (Opp.29) that "under Plaintiffs' [attainder] theory neither the States nor Congress would have the power to regulate PBMs that own pharmacies."  Indeed, states (including Arkansas) can and already do regulate PBMs that own pharmacies in myriad ways – but those ways do not constitute forbidden punishment and thus do not offend the Bill of Attainder Clause.  ESI Br.12.

Moreover, as explained in ESI's opening brief (at 19), Act 624's preamble specifies its targets in terms of past conduct as well.  Defendants' only response – that the preamble "has no operative effect" (Opp.30) – is unavailing.  A statute's "preamble may be referred to in order to assist in ascertaining the intent and meaning of a statute" so long as the meaning suggested by the preamble is not "plainly inconsistent with the words used in the body of the statute."  *Price v. Forrest*, 173 U.S. 410, 427 (1899).  There is no inconsistency here, so the "argument that the Court should not consider the preamble … because it was not formally enacted as law is unpersuasive," *In re Kavolchyck*, 164 B.R. 1018, 1022 n.2 (S.D. Fla. 1994).

The second bill-of-attainder element – punishment – is likewise satisfied.  This element may be met under any one of three tests: history, function, or motivation.  ESI Br.19-20.  Defendants' counterarguments each fail.

Defendants focus primarily on the historical test, but fail to rebut ESI's argument (Br.19-20) that Act 624 employs historically forbidden punishment both by "banish[ing]" PBM-affiliated pharmacies from Arkansas and by "barring [them] from participation in specified employments or vocations," *Nixon*, 433 U.S. at 474.  Defendants insist (Opp.32) that ESI "will not be 'banished,'" but "simply prohibit[ed] … from operating in the State."  This is a distinction without a difference.  And it is no answer to say that ESI could avoid banishment by making a

"choice of whether [it] want[s] to be a PBM or a pharmacy" (Opp.32).  As noted, "ESI and its affiliated pharmacies have long-standing, deeply-interwoven common ownership and business relationships"; "[d]ismantling the organization" as Defendants suggest "is not practical or feasible."  ESI Compl. ¶8.  Defendants do not answer or even acknowledge this point.

With respect to whether Act 624 "bar[s] [its targets] from participation in specified employments or vocations," *Nixon*, 433 U.S. at 474, Defendants again offer a distinction without a difference.  This time, they insist (Opp.31) that although "it provides … that certain entities (PBMs) cannot hold a permit to maintain a particular type of facility" – namely, a pharmacy – Act 624 somehow "says nothing about the practice of [the] profession" of pharmacy.  The obvious effect of prohibiting entities from holding a permit, however, is to prohibit them from practicing their profession (here, the art of pharmacy).  Defendants cannot avoid these dispositive points with wordplay.

As for the functional and motivational tests, Defendants' truncated responses (Opp.32) rely entirely on Act 624's purported legitimate purposes.  But as explained both above (pp.6-7) and in ESI's opening brief (at 16-17), those purported purposes are plainly pretextual.[1]

In sum, because Act 624 specifically targets PBMs, imposes punishment under any test, and does all of that without a judicial trial (as Defendants concede), ESI is very likely to succeed on its claim that the law is a bill of attainder.

## C.    Act 624 Is Preempted By TRICARE

As explained in ESI's opening brief (at 21-25), Act 624 is both expressly and implicitly preempted as to certain ESI Plaintiffs (ESI, Express Scripts Pharmacy, Accredo, and Freedom

---

[1] Any lingering doubt as to whether Act 624 inflicts punishment should be resolved by Arkansas law, which expressly classifies the revocation of pharmacy permits as a "penalt[y]" imposed for misconduct.  Ark. Code Ann. §§17-92-313(a)(1), 17-92-315; *see* ESI Br.9-10.  Despite PCMA raising this point in its opening brief (at 27), Defendants offer no response.

Fertility) due to their contractual obligations to administer pharmacy services through DoD's TRICARE program.  Defendants do not acknowledge, let alone respond to, ESI's express-preemption claim – *i.e.*, ESI's claim that Act 624 is preempted by the TRICARE statute and regulations providing that state laws "relating to … health care delivery … shall not apply to any [TRICARE] contract," 10 U.S.C. §1103(a); *see also* 32 C.F.R. §§199.17(a)(7)(i), 199.21(o)(1).  Again, Defendants' "failure to … discuss [this] issue" constitutes "abandonment" of any opposition to it.  *Hacker*, 459 F.3d at 937 n.2.  Such abandonment means that ESI is exceedingly likely (if not certain) to succeed on its express-preemption argument.  That by itself fully supports ESI's TRICARE-preemption claim.

Defendants also do not dispute that implied (obstacle) preemption applies to the extent Act 624 would preclude ESI from fulfilling its TRICARE obligations.  Defendants' sole argument (which they present alternatively under merits and ripeness) is that Act 624 does not pose an obstacle to TRICARE because the law provides that the State Board of Pharmacy "*may* issue a limited use permit for certain *rare*, *orphan*, or *limited distribution* drugs that are otherwise unavailable in the market," Act 624 §2, to be codified as Ark. Code Ann. §17-92-416(d)(1) (emphases added).  In particular, Defendants assert, without support or explanation, that that provision's reference to "'limited distribution drugs' would likely apply to Express Scripts in connection with its administration of the TRICARE Program."  Opp.63.  For several reasons, that equivocal assertion is woefully insufficient to undermine ESI's obstacle-preemption argument.

First, multiple factors call into question Defendants' unsupported suggestion that, by invoking Act 624's "limited distribution drug" language, ESI could "likely" obtain limited-use permits to fulfill the full range of their TRICARE obligations.  ESI's TRICARE obligations

include dispensing all types of medications, not just "rare, orphan, or limited distribution drugs," Act 624 §2, to be codified as Ark. Code Ann. §17-92-416(d)(1).  Notably, TRICARE itself defines "limited distribution drugs" as only a subset of the prescriptions dispensed to TRICARE beneficiaries by ESI pharmacies.  Defense Health Agency, *TRICARE Pharmacy Program Handbook* 18 (Jan. 2025).  And as noted in ESI's opening brief (at 25), a senator who supported Act 624 testified that the legislation was *intended* to interfere with ESI's participation in TRICARE.

Second, even if Act 624 afforded the Pharmacy Board discretion to grant limited-use permits covering the full range of ESI Plaintiffs' TRICARE obligations (*i.e.*, all types of medications), that would not defeat preemption.  The Supreme Court has long held that state licensing boards cannot be afforded "a virtual power of review" over federal contracting decisions.  *Leslie Miller Inc. v. Arkansas*, 352 U.S. 187, 190 (1956) (per curiam).  Thus, federal contractors are immune from "state control in the performance of their duties," including any "requirement that [the contractors] desist from performance until they satisfy a state officer upon examination."  *Id*.

Third, even if the Board granted ESI limited-use permits covering all of its TRICARE operations, those permits would expire in as few as 90 days, and at the latest by September 2027.  Act 624 §2, to be codified as Ark. Code Ann. §17-92-416(d)(2)(A)(ii), (B).  That short timespan renders any relief offered by a limited-use permit illusory.  DoD's TRICARE contract with ESI runs through 2029.  Jenkins Decl. ¶7.  ESI is thus contractually obligated to serve TRICARE beneficiaries in Arkansas for that entire period.

Moreover, while Defendants proceed (Opp.63) as if the question is whether federal law allows only *Arkansas* to do what it has done, the proper inquiry for preemption is whether "fifty

different states," *Arkansas Blue Cross & Blue Shield v. St. Mary's Hospital, Inc.*, 947 F.2d 1341,

1348 (8th Cir. 1991), could prohibit DoD's chosen mail-order pharmacies from operating in the

state, or condition the ability of the ESI-affiliated pharmacies to carry out their federal functions

on discretionary state approval.  The answer to that question is a resounding "no," because such a

regime would devastate the "stability," "uniform[ity]," and "national" character of the TRICARE

pharmacy benefits program, 10 U.S.C. §§1071, 1073(b), 1074g(a)(2)(E)(iii).  Put simply, if Act

624 is not preempted, then *every* state could essentially ban out-of-state pharmacies from

operating within its borders, in which case no single pharmacy in the country would be able to

provide the nationwide services TRICARE requires.

For the same reasons, ESI's preemption claim is ripe, *i.e.*, the issues are "fit[] for judicial

resolution" and "withholding court consideration" would cause ESI "hardship."  *United States v.

Gates*, 915 F.3d 561, 563 (8th Cir. 2019) (per curiam).  It makes no difference that Act 624

"ha[s] yet to be applied"; the "legal uncertainty" that the Board's discretion engenders places the

operations of a federal program "at risk" – and does so *now*.  *Nebraska Public Power District v.

MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000) (citing *Pacific Gas & Electric

Co. v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190, 200-

202 (1983)).[2]

Finally, Defendants are wrong that ESI Plaintiffs' preemption claim "does not apply to

any services provided by ESI affiliates in Arkansas outside of the TRICARE program."  Opp.63.

As explained in ESI's complaint (¶129) and opening brief (at 25), a state law that is preempted

"has no effect," *In re Aurora Dairy Corp. Organic Milk Marketing & Sales Practices Litigation*,

---

[2] Defendants appear to fault ESI for "hav[ing] not applied for" a limited-use permit.  Opp.63.
But the State Board of Pharmacy has not established an application process.  *See* Act 624 §2, to
be codified as Ark. Code Ann. §17-92-416(d)(3)(A).

621 F.3d 781, 791 (8th Cir. 2010).  The TRICARE regulations say the same thing, providing that any law preempted by TRICARE "is without any force or effect."  32 C.F.R. §199.21(o)(2).  Indeed, immediately after the language just quoted, the same regulation goes on to say: "and State or local governments have no legal authority to enforce them in relation to the TRICARE pharmacy contracts."  *Id.*  That confirms that preemption is not limited to carrying out TRICARE pharmacy contracts; Defendants' reading would render the phrase "without any force and effect" a nullity.  Because Act 624 operates by requiring the revocation or non-renewal of pharmacy licenses, the appropriate relief on ESI's preemption claim is to prevent those provisions from being given "any force or effect," by enjoining Defendants from revoking or failing to renew the pharmacy licenses held by the ESI Plaintiffs that participate in TRICARE.  These plaintiffs should retain their pharmacy licenses, without limitation.  Defendants cite no authority for their contrary claim.

## II.    THE REMAINING PRELIMINARY-INJUNCTION FACTORS FAVOR INJUNCTIVE RELIEF

ESI's opening brief explained both (at 26-31) that Act 624 is already and increasingly causing ESI several forms of irreparable harm, and (at 31-35) that the balance of equities and public interest favor a preliminary injunction because the harm to ESI and the tens of thousands of patients who rely on ESI for access to medications far outweighs any conceivable harm Defendants might suffer from preserving the *status quo* pending final resolution of this case.  These points were grounded in sworn declarations from business professionals and affected patients.  In contrast, Defendants give these topics a mere half-paragraph at the end of their brief (Opp.66).  Each of their abbreviated arguments is roundly refuted by the record.

First, Defendants suggest (Opp.66) that the harms Act 624 will inflict on ESI and patients across Arkansas are not imminent because "Act 624 does not go into effect until January 1, 2026."  But as ESI's opening brief explained (at 10, 31), the statute lays out a series of milestone

dates *before* January 1 – the first of which (July 1) has already passed – and those milestones are *already* inflicting various forms of harm on both ESI and Arkansans.  Peppers Decl. ¶¶19, 29-30; Harper Decl. ¶15; House Decl. ¶17.  In short, far from being remote, the harm is already here – and growing.  Defendants have nothing to say about any of this.

Second, Defendants say that Act 624's harms are "not irreparable because Plaintiffs *may* be able to seek reinstatement of their retail pharmacy permits if they prevail at a trial on the merits."  Opp.66 (emphasis added).  Such speculation ignores the binding precedent ESI cited, which holds that even the "possibility of permanent loss of customers to a competitor" constitutes irreparable harm, *Iowa Utilities Board v. FCC*, 109 F.3d 418 (8th Cir. 1996), and that a "loss of *goodwill* among customers" is likewise "sufficient to establish a threat of irreparable harm," *Rogers Group, Inc. v. City of Fayetteville*, 629 F.3d 784, 789-790 (8th Cir. 2010) (emphasis added).  It also ignores ESI's undisputed evidence that Act 624 is injuring it in ways that eventual reinstatement cannot remedy (including because the sovereign immunity that Defendants invoke (Opp.66) would likely prevent recovery of any economic losses ESI suffered prior to reinstatement).  *See* ESI Br.26-31; Peppers Decl. ¶¶20-23, 25-30.[3]

Third, Defendants trumpet (Opp.66) Act 624's limited-use-permit provisions as a solution to "some" – but not all – of the statute's harms.  Again, ESI already explained why that is wrong:  Those provisions cover only rare, orphan, and limited distribution drugs (not all

---

[3] Defendants invoke sovereign immunity in response to the claims brought by CVS and PCMA against the State Board of Pharmacy itself.  Defendants do not argue that this immunity bars ESI's claims against the Board's members or its executive director in their official capacities.  And any such argument would fail, as the power of courts to enjoin state officers from future violations of federal law is beyond dispute.  *See Johnson v. Griffin*, 69 F.4th 506, 512-513 (8th Cir. 2023) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

medications) and the discretionary, time-limited authority will not stem all of ESI's losses.  ESI Br.34-35; Peppers Decl. ¶27.  Defendants again ignore ESI's explanation.

Finally, Defendants are wrong to assert (Opp.66) that the balance of harms weighs against injunctive relief because "the harm that will flow to Defendants if Act 624 is enjoined is *per se* irreparable."  A state is harmed when enjoined from enforcing a law that "appear[s] harmonious with the Constitution," *Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 909 (8th Cir. 2020) (per curiam) (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)); but states have "no interest in enforcing laws that are unconstitutional," *Brandt v. Rutledge*, 551 F.Supp.3d 882, 892 (E.D. Ark. 2021).  Nor can Defendants show they will be harmed if they are blocked from enforcing Act 624, as Arkansas law already prohibits the purported anticompetitive conduct they cite to justify the statute.  *See supra* pp.6-7.  And even if Act 624 were not blatantly unconstitutional and if Defendants could establish that they would be injured by an injunction preserving the *status quo*, any such harm would pale in comparison to the harms that ESI and patients face as a result of Act 624.  Once more, Defendants' silence in the face of ESI's extensive argument and declarations confirms that the "likely harm without a preliminary injunction exceeds [the] likely harm with a preliminary injunction in place," *Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025).

## CONCLUSION

The ESI Plaintiffs' motion for a preliminary injunction should be granted.

July 18, 2025

Respectfully submitted,

*/s/ Jennifer Milici*

Scott P. Richardson (Ark. Bar. No. 2001208)
Bart W. Calhoun (Ark. Bar. No. 2011221)
Brittany Dawn Webb (Ark. Bar. No. 2023139)
Lauren E. McCauley (Ark. Bar. No. 2023140)
MCDANIEL WOLFF PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000 (tel.)
(866) 419-1601 (fax)
scott@mcdanielwolff.com
bart@mcdanielwolff.com
bwebb@mcdanielwolff.com
lmccauley@mcdanielwolff.com

Jennifer Milici (*pro hac vice*)
Daniel S. Volchok (*pro hac vice*)
Kevin M. Lamb (*pro hac vice*)
Joseph M. Meyer (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
(202) 663-6000 (tel.)
(202) 663-6363 (fax)
jennifer.milici@wilmerhale.com
daniel.volchok@wilmerhale.com
kevin.lamb@wilmerhale.com
joseph.meyer@wilmerhale.com